HUDSON et al. v. MONONGAHELA RIVER CONSOLIDATED COAL & COKE CO.

(Circuit Court of Appeals, Third Circuit.  February 27, 1905.)

No. 40.

COLLISION—STEAMERS MEETING IN RIVER—CONSTRUCTION OF PASSING RULE.
  Under rule 1 of the pilot rules, relating to the passing of steamers on rivers, which requires the pilot of the ascending steamer to first indicate the side on which he desires to pass, his signal is controlling, unless the descending steamer shall deem such passing dangerous, and shall indicate such fact by danger signals and by a contrary signal, as required by the rule.

  [Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, § 209.
  Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

Appeal from the District Court of the United States for the Western District of Pennsylvania.

Arthur O. Fording, for appellants.
H. A. Jones, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge.  The only question raised by the assignment of errors in this case is whether the court below erred in its finding that the collision between the Monterey and the Florence Belle was caused by the latter's faulty navigation. The learned proctor for the appellants contends that this finding was erroneously "based chiefly upon the following premises: (1) That 'the Monterey, coming upstream, had the choice of right of way'; and (2) that, 'if the position assigned the two boats by the respondent's answer be correct, the accident can be accounted for on no reasonable or probable theory of human action.'"

1. The appellants' argument as to the first of these "premises" severs one clause of the pilot rules from its context, and applies it to a single

phrase abstracted from the opinion of the court below. Neither the rule nor the opinion should be so dealt with. The rule is:

"Rule 1. When steamers are approaching each other from opposite directions, the signals for passing shall be one blast of the whistle to pass to the right, and two blasts of the whistle to pass to the left. The pilot on the ascending steamer shall be the first to indicate the side on which he desires to pass; but if the pilot on the descending steamer shall deem it dangerous to take the side indicated by the pilot of the ascending steamer, he shall at once signify that fact by sounding the alarm or danger signal of three or more short blasts of the whistle, and it shall be the duty of the pilot of the ascending steamer to answer by a similar signal of three or more blasts of the whistle, after which the pilot of the descending steamer may indicate by his whistle the side on which he desires to pass, and the pilot of the ascending steamer shall govern himself accordingly, the descending steamer being entitled to the right of way. The signals for passing must be made, answered and understood before the steamers have arrived at a distance of 800 yards of each other: * * *"

Now, when the rule is fairly read, it becomes manifest that the ascending steamer is required, in the first instance, to indicate the side on which it desires to pass, and that its indicated desire is to be controlling, unless the descending steamer shall sound the danger signal, and, upon that being responded to, shall indicate the side on which it desires to pass. In other words, the descending steamer is not given the right of way absolutely, but subject to the performance by it of the conditions precedent which are plainly prescribed. With the rule, when thus understood, there is no difficulty in reconciling the remark of the learned judge that the Monterey had the right of way, for he also said:

"After carefully weighing the proofs in this case, we have reached the conclusion that the Monterey duly signaled the Belle of her intention to pass to the left; that, receiving no answer, she reversed, and so continued until the collision, made no change in her course, and was in no fault."

If the learned judge was right, as we think he was, in finding that the Monterey had duly signaled her intention to pass to the left, and had received no answer to that signal, then, clearly, he was right in holding that under the rule the Monterey's "choice of right of way" remained operative, and was binding upon the Belle.

2. The second contention of the appellants goes merely to an observation which was made by the learned district judge in the course of his reasoning. In our opinion, that observation was justified, but we need not dwell upon it, for the true question is not whether the judge's reasoning was faultless, but whether the court's conclusion that the Belle alone was blamable was in accordance with the weight of the evidence, and attentive examination of the record has satisfied us that it was. Much of the testimony was conflicting, and no useful purpose would be served by discussing it. We think the learned judge was right in especially relying upon that of the witness Stinkle, who was in no way concerned in the accident, and who did not appear to be subject to any biasing influence.

The case, as we view it, involved only questions of fact, and as, in our judgment, they were rightly resolved by the court below, its decree is affirmed.